FILED
2024 May-02  AM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| JAIME GENTZKE and KENNETH GENTZKE<br><br>*Plaintiffs*,<br><br>v.<br><br>ALABAMA WOMENS HEALTH CENTER, P.C.<br><br>*Defendant*. | **Civil Action No.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jaime Gentzke and Kenneth Gentzke, through their attorneys, Eisenberg & Baum, LLP, and the Law Office of Edward I. Zwilling, LLC, state their Complaint against Defendant Alabama Women's Health Center P.C. (collectively, "Alabama Women's Health"):

### INTRODUCTION

1. For expecting parents, being pregnant and having the birth of a child is one of life's most memorable moments. Sadly however, Alabama Women's Health failed to provide interpreters to accommodate Kenneth Gentkze's deafness at critical junctures to allow him to fully and completely understand and participate in his wife's medical care. When Mr. & Mrs. Gentzke tried to assert their rights under the law, Mrs. Gentzke was terminated from Alabama Women's Health out of retaliation and because of her association with Mr. Gentzke.

1

2.      Because of his deafness, Kenneth Gentzke primarily communicates in American Sign Language ("ASL") and requires an ASL interpreter to receive equal treatment and equally effective communication.

3.      Mr. Gentzke is entitled to equal access to services offered by Alabama Women's Health as are enjoyed by non-disabled persons.

4.      Under federal regulations, which authoritatively construe the associated statutes, a covered is required to provide "appropriate auxiliary aids" to a deaf patient "where necessary to ensure effective communication." *See, e.g.*, 28 C.F.R. § 35.160(b)(1), *adopted by* 45 C.F.R. § 92.102(a) (regulation implementing the Affordable Care Act).

5.      Alabama Women's Health's discrimination against Mr. Gentzke, and his resulting lack of understanding, caused both Mr. and Mrs. Gentzke to suffer anger, humiliation, frustration, and emotional distress. Indeed, civil rights violations are inherently distressing because they inflict a profound personal humiliation and reinvoke a history of exclusion.

6.      Mr. and Mrs. Gentzke bring this action seeking nominal, compensatory, declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendant's unlawful discrimination against them on the basis of Mr. Gentzke's disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA"),

**PARTIES**

7.     Plaintiffs are residents of this district, Mr. Gentzke is substantially limited in the major life activities of hearing and speaking. Thus, he has a "disability" within the meaning of city, state, and federal civil rights laws.

8.     Defendant Alabama Women's Health Hospital is located in Huntsville, Alabama.

9.     Upon information and belief, Alabama Women's Health is a place of public accommodation and a recipient of federal financial assistance.

10.     Medicare and Medicaid reimburse Alabama Women's Health for care that it provides to Medicare and Medicaid beneficiaries.

11.     Alabama Women's Health agreed to receive federal funds in exchange for promising to refrain from discriminating against qualified individuals with disabilities, among other reasons.

12.     The federal government has substantially performed its obligations under this contractual arrangement with Alabama Women's Health, including reimbursements for Medicare and Medicaid, and was willing and able to perform its remaining obligations.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction for the federal law claim under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the

3

United States.

14.    Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

15.    Kenneth Gentzke is a profoundly deaf individual who communicates primarily in American Sign Language or "ASL."

16.    Some background on deaf culture is necessary to understand the balance of this case. English and ASL are different languages, and so Mr. Gentzke is unable to effectively communicate by reading lips. Lip reading is the ability to understand the speech of another by watching the speaker's lips. It is no substitute for direct communication through a qualified sign language interpreter because many mouth movements appear identical on the lips. What is more, even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language because English and ASL are distinct languages with different grammatical structures. As another example, ASL and French Sign Language are also distinct languages.

17.    Due to the inherent limitations of lipreading, he cannot make out most of the aural information that is presented during important healthcare communications, such as group and individual therapy, lectures, and consultations.

It is not possible for people who lipread to consistently understand everything that is said by lipreading alone. Common difficulties associated with lipreading include but are not limited to: normal speech is too fast to lipread easily, many sounds are not seen on the lips, many speech patterns look similar on the lips, and many sounds look alike, even though they are different.

18. There are many factors outside of Mr. Gentzke's control that reduce the effectiveness of lipreading because many people, including that healthcare professionals and other patients may not speak clearly, have facial hair or accents that interferes with lipreading, cover parts of their mouth when speaking, and not look directly at the person who is lipreading.

19. On October 9, 2023, Jaime Gentzke and Kenneth Gentzke discovered Mrs. Gentzke was pregnant and subsequently called to schedule their first prenatal appointment.

20. On October 17, 2023, Mrs. Gentzke requested an in-person ASL/English interpreter for all prenatal appointments for her husband.

21. The same day, Mrs. Gentzke received a call from the medical provider's office stating they would not provide an interpreter because the plaintiff's husband was not the patient.

22. Mrs. Gentzke informed the provider's office of their rights under the Americans with Disabilities Act (ADA) and sent links through the patient portal

explaining these rights.

23.    On October 18, 2023, Ms. Gentzke spoke with Dale Baxter from the provider's Human Resources department, who discussed the request for an ASL/English interpreter with the board and Dr. Yashika Robinson.

24.    During this conversation, Ms. Gentzke reiterated the request for an in-person interpreter and explained the benefits of having one.

25.    Baxter requested the plaintiff email a list of ASL/English interpreters or agencies that could provide such services.

26.    Baxter promised Mrs. Gentzke a follow-up after the board meeting regarding the request.

27.    By October 25, 2023, the plaintiff had not received any response and followed up with the provider's office.

28.     The provider's office informed the plaintiff that they would provide Video Remote Interpreting (VRI) services for all appointments instead of an in-person interpreter.

29.    On October 26, 2023, Ms. Gentzke attended their appointment with her husband, showing up as scheduled.

30.    Ms. Gentzke was called back 15 minutes after their appointment time and requested an interpreter during triage, which was denied until the nurse practitioner arrived.

6

31.    The VRI was set up on a laptop with a dark background and inadequate lighting, resulting in several pieces of information being missed.

32.    Dr. Robinson called the plaintiff in the evening, insisting that VRI services would suffice for future appointments but promised to try to arrange for an in-person interpreter at the time of birth.

33.    On November 6, 2023, the plaintiff informed the practice they would be 15 minutes late due to traffic.

34.    A nurse stated she did not want to close the office late and asked to reschedule the appointment for November 14.

35.    At the rescheduled appointment on November 14, the plaintiff arrived at 4:10 pm and was called in after a 15-minute wait.

36.    The nurse at this appointment insisted that no VRI was needed for the ultrasound, despite the plaintiff's request for one due to the detailed explanation involved.

37.    Dale Baxter, representing HR, informed the plaintiff that VRI services would not be provided for imaging appointments.

38.    The plaintiff began to record the conversation, feeling that Baxter was intentionally creating a confrontational scene.

39.    The plaintiff was given the option to continue the appointment without VRI or come back on November 27th to discuss the results with Dr. Robinson.

40. On November 18, 2023, the plaintiff received a certified letter from the provider stating they would no longer accept the plaintiff as a patient.

41. The letter cited disruptive behavior, unreasonable demands, and threats of legal action as reasons for termination of care.

42. This action by the provider directly contradicts the requirements set forth under the Affordable Care Act to provide appropriate accommodations for individuals with disabilities.

43. The provider's refusal to provide any interpreter for imaging compromised the plaintiff's ability to receive equitable and effective medical care.

44. The provider's actions have caused the plaintiff significant stress, anxiety, and a sense of discrimination during a critical time of prenatal care.

45. The termination of care based on alleged disruptive behavior and unreasonable demands represents a retaliatory action against the plaintiff for asserting their rights under the ACA.

46. The provider's conduct exhibits a clear failure to engage in a meaningful process to accommodate the plaintiff's disability, as required by federal law.

47. By refusing any interpreter for imaging, the provider has denied the plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations they offer.

48.     The provider's actions and refusal to accommodate the plaintiff's disability have directly led to the filing of this lawsuit to seek redress for violations of the plaintiff's rights under the Affordable Care Act and Section 504 of the Rehabilitation Act.

49.     Mr. Gentzke requires an ASL interpreter to receive equal participation and equally effective communication, especially for complex interactions.

50.     Mr. Gentzke was deprived of the full and equal enjoyment of Alabama Women's Health's benefits and services. Specifically, he did not receive a "like experience" as compared to non-disabled patients who receive full benefits and services from Alabama Women's Health by communicating in their primary and preferred language.

51.     Mrs. Gentzke was also deprived of the full and equal enjoyment of Alabama Women's Health's benefits and services as a result of her association with Mr. Gentzke. When Mr. and Mrs. Gentzke asserted Mr. Gentzke's right to an interpreter, the practice terminated Mrs. Gentzke's care with the clinic, leaving her to find a new provider partially through her pregnancy.

52.     Accordingly, Mr. Gentzke, as a person seeking medical treatment, had an expectation interest in the ability to fully participate in his wife's medical care, healthcare decisions, and all of the benefits and services provided by Alabama Women's Health, including but not limited to vital discussions with doctors, nurses,

and other members of the medical staff.

53. Mr. Gentzke also had an expectation interest in being able to communicate with and be informed about his wife's care by Alabama Women's Health in his primary or preferred language or through some other equally effective form of communication because that is what federal antidiscrimination laws require.

54. In failing to provide such equal treatment, Alabama Women's Health intentionally discriminated against Mr. Gentzke and acted with deliberate indifference to his federally protected rights because Alabama Women's Health's staff knew that it was not effectively communicating with Mr. Gentzke with the methods they were using.

55. Likewise, Alabama Women's Health's staff knew that Mr. Gentzke would not be receiving equal participation on this same basis.

56. The actions of Alabama Women's Health's staff compromised Mr. Gentzke's ability to receive equal participation when he did not communicate in his preferred and primary language, affecting his ability to receive communications as effective as those received by non-disabled individuals.

57. Alabama Women's Health's discrimination against Mr. and Mrs. Gentzke not only caused emotional distress but violated their civil rights.

58. Mr. and Mrs. Gentzke seek any and all remedies available under contract law, including expectation-interest damages and specific performance.

Alabama Women's Health must honor his right to understand his wife's treatment and medical history by providing ASL interpreters to explain her prior history and procedures. A recitation of his wife's care, with the ability to ask questions, would put Mr. Gentzke in as good a position as if the contract had been performed.

59.   Mr. Gentzke has no adequate remedy to fully understand all of his wife's medical communications at Alabama Women's Health. Here, when patients like Mr. Gentzke arrive at the office, they expect that they will be able to communicate with their wife's healthcare provider about their care.

60.   Mr. Gentzke should receive expectation-interest damages to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.

61.   Mr. Gentzke had a reasonable expectation in the ability to fully participate in his wife's medical care, and Alabama Women's Health denied Mr. Gentzke this expectation interest by denying him the invaluable opportunity to be informed about his wife's care and participate in healthcare decisions.

62.   Alabama Women's Health was unjustly enriched through its failure to pay for interpreters and otherwise saved those costs for Mr. Gentzke's stay.

63.   Based on Mr. Gentzke's experience, it is evident that Alabama Women's Health has failed to implement proper policies, procedures, trainings, and

practices respecting the civil rights and communication needs of deaf individuals.

64.     Alabama Women's Health knew or should have known of its obligations as a health care provider under city, state, and federal antidiscrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure equal communication, participation, and treatment of deaf individuals.

65.     Alabama Women's Health knew or should have known that its actions and inactions created an unreasonable risk of causing Mr. Gentzke greater levels of emotional distress than a hearing person would be expected to experience.

66.     Alabama Women's Health's actions and inactions compromised Mr. Gentzke's ability to receive equal participation when he did not communicate in his preferred and primary language, affecting his ability to receive communications as effective as those received by non-disabled patients.

67.     As a result of Alabama Women's Health's failure to accommodate Mr. Gentzke, he received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

68.     In doing so, Alabama Women's Health intentionally discriminated against Mr. Gentzke and acted with deliberate indifference to his civil rights.

69.     Alabama Women's Health intentionally and deliberately discriminated against Mr. Gentzke by denying him the opportunity for the full and equal enjoyment

12

of its programs, services and activities.

70.    Alabama Women's Health intentionally and deliberately discriminated against Mr. Gentzke by denying him the opportunity to participate in or benefit from its programs, services and activities.

71.    Alabama Women's Health intentionally and deliberately discriminated against Mr. Gentzke by offering or affording him services that are not equal to those services afforded to other individuals without hearing impairments.

72.    Alabama Women's Health intentionally and deliberately discriminated against Mr. Gentzke by failing to make reasonable modifications in policies, practices, or procedures.

73.    Alabama Women's Health intentionally and deliberately discriminated against Mr. Gentzke by failing to establish a procedure for effective communication with Mr. Gentzke for the purpose of providing health care.

74.    Alabama Women's Health intentionally and deliberately discriminated against Mrs. Gentzke by her association with Mr. Gentzke, illustrated by the termination of her care with the clinic.

75.    Mr. and Mrs. Gentzke still want to visit Alabama Women's Health in the future given its proximity to Ms. Gentzke residence and the fact that she has previously visited Alabama Women's Health, which maintains her medical records and history. However, they have been barred from doing so by Alabama Women's

Health's discrimination against them on the basis of Mr. Gentzke's disability.

## CAUSES OF ACTION

### CLAIM I:  Violations of the Patient Protection and Affordable Care Act

76.    Mr. Gentzke incorporates by reference all preceding paragraphs and realleges them in support of this claim.

77.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to Defendant's conduct.

78.    At all times relevant to this action, Mr. Gentzke has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

79.    At all times relevant to this action, Defendant received federal financial assistance, including Medicare and Medicaid reimbursements, and has been principally engaged in the business of providing health care. Thus, Defendant is a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

80.    Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

81.    At all times relevant to this action, Mr. Gentzke's primary language for communication has been American Sign Language, and he "has a limited ability to read, write, speak, or understand English." 45 C.F.R. § 92.4. He has thus been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act.

82.    Under the Affordable Care Act, federal regulations adopt "the standards found at 28 CFR 35.160 through 35.164," which come from Title II of the Americans with Disabilities Act. 45 C.F.R. § 92.102(a).

83.    Under the Affordable Care Act, federal regulations provide that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and

independence of the individual with a disability." 28 C.F.R. § 35.160(b), *adopted by* 45 C.F.R. § 92.102(a). This regulation authoritatively construes the Affordable Care Act and was violated by Defendant.

84. Under the Affordable Care Act, federal regulations provide that a covered entity "shall take reasonable steps to ensure meaningful access to such programs or activities by limited English proficient individuals," 45 C.F.R. § 92.101(a), and that where an individual "requires the provision of language assistance services, such services must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency. Language assistance services may include: (i) Oral language assistance, including interpretation in non-English languages provided in-person or remotely by a qualified interpreter for an individual with limited English proficiency, and the use of qualified bilingual or multilingual staff to communicate directly with individuals with limited English proficiency; and (ii) Written translation, performed by a qualified translator, of written content in paper or electronic form into languages other than English." 45 C.F.R. § 92.101(b)(2)(i)–(iv). This regulation authoritatively construes the Affordable Care Act and was violated by Defendant.

85. As set forth above, Defendant discriminated against Mr. Gentzke on the basis of his disability in violation of the ACA and its implementing regulations.

86. The ACA, by incorporating the enforcement mechanism of the

Rehabilitation Act, extends a cause of action to Plaintiff—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act.  42 U.S.C. § 18116(a).

87.    The Rehabilitation Act—and by extension, the ACA—explicitly authorize the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

88.    Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "*In addition to any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . .*" 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added). And 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

89.    As such, "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies,*

17

procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

90.    42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

91.    Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

92.    Mr. Gentzke is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

## CLAIM II: VIOLATIONS OF SECTION 504
## OF THE REHABILITATION ACT

93.    Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

94.    At all times relevant to this action, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 was in full force and effect and applied to the

Defendant's conduct.

95.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendant's conduct.

96.     At all times relevant to this action, Plaintiffs had substantial limitations to the major life activity of hearing and speaking and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

97.     At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

98.     Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

99.     Section 120a of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, which amends the language of § 504, states that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act

or failure to act by any recipient of Federal assistance." 29 U.S.C. § 794a.

100.   Mrs. Gentzke is a "person aggrieved" for purposes of Section 504. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) ("non-disabled parties bringing associational discrimination claims need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated"). When Mr. Gentzke asserted his right to an interpreter, Defendant dismissed Mrs. Gentzke from its practice as a result of her association with Mr. Gentzke. Mrs. Gentzke suffered tangible consequences from Defendant's discrimination against Mr. Gentzke on the basis of his disability, allowing her to bring an associational discrimination claim. *See, e.g., McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1142 (11th Cir. 2014) (finding that plaintiffs seeking to assert associational standing must themselves have been denied benefits or services as a result of their association with a disabled person).

101.   Defendant has discriminated and continues to discriminate against Plaintiff solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 504, 29 U.S.C. § 794.

102.   Defendant discriminated against the Plaintiffs by failing to ensure

20

effective communication through the provision of qualified sign language interpreters and instead forcing Mrs. Gentzke to serve as an interpreter.

103. On information and belief, the refusal to offer on-site ASL interpreter services is a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters for patients at their practice.

104. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other Deaf patients and family members.

105. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

106. Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf individuals meaningful access to, and full and equal enjoyment of, Defendant's facilities, services, or

programs in violation of Section 1557 of the Patient Protection and Affordable Care Act:

B.   Issue an injunction ordering Defendant to:

i.   offer an interpreter for the patient at no cost to the patient whenever an Alabama Women's Health employee encounters a patient whose primary language is something other than English;

ii.   Accept Mr. & Mrs. Gentzke back as patients

iii.   train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under state and federal law;

iv.   honor Plaintiff's right to understand his wife's medical history by providing American Sign Language interpreters to explain his wife's prior history and procedures because a recitation of her care, with the ability to ask questions, would put him in as good a position as if the contract had been performed;

C.   Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiffs to the position they would have been in but for the discriminatory conduct.

D.   Award to Plaintiffs:

i.   Nominal damages;

22

ii.    Compensatory damages;

iii.    Reasonable costs and attorney's fees;

iv.    Interest on all amounts at the highest rates and earliest dates allowed by law; and

v.    Any and all other relief that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all of the issues a jury may properly decide, and for all of the requested relief that a jury may award.

Dated: May 1, 2024                     Respectfully submitted,

Andrew Rozynski
(pro hac vice petition forthcoming)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com

*/s/ Edward I. Zwilling*
Edward I. Zwilling (ASB-1564-L54E)
Law Office of Edward I. Zwilling, LLC
4000 Eagle Point Corporate Dr.
Birmingham, AL 35242
205-822-2701
edwardzwilling@zwillinglaw.com
*Attorneys for Plaintiff*

23